**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION**


**DAVID A. BOYETTE,**

     **Plaintiff,**

**vs.**                          **Case No. 1:13cv90-MP/CAS**

**CAROLYN W. COLVIN, Acting
Commissioner of the Social Security
Administration,**

     **Defendant.**

_____/


### REPORT AND RECOMMENDATION

     This is a Social Security case referred to the undersigned United States

Magistrate Judge for a report and recommendation pursuant to 28 U.S.C. § 636(b) and

Local Rule 72.2(D). It is now before the Court pursuant to 42 U.S.C. § 405(g) for review

of the final determination of the Acting Commissioner (Commissioner) of the Social

Security Administration denying Plaintiff's application for a period of disability and

Disability Insurance Benefits (DIB) pursuant to Title II of the Social Security Act. After

careful consideration of the record, it is recommended that the decision of the

Commissioner be affirmed.

**I. Procedural History**

     On February 1, 2010, Plaintiff, David A. Boyette, filed an application for a period

of disability and DIB, alleging disability beginning on July 17, 2007. R. 12, 111-12, 142.

(Citations to the record shall be by the symbol "R." followed by a page number that

appears in the lower right corner.)  Plaintiff's date last insured or the date by which his disability must have commenced in order to receive benefits under Title II (DIB) is December 31, 2012.  R. 12, 143.

Plaintiff's application was denied initially on February 23, 2010, and upon reconsideration on August 20, 2010.  R. 12, 66-68, 75-76.  On September 20, 2010, Plaintiff filed a request for hearing.  R. 12.  On June 13, 2011, Plaintiff appeared and testified at a hearing conducted by Administrative Law Judge (ALJ) Kelley Fitzgerald in Jacksonville, Florida.  R. 12, 26-54.  Donna P. Mancini, an impartial vocational expert, testified during the hearing.  R. 12, 49-52, 104-06 (Resume).  Plaintiff was represented by Martin J. Goldberg, an attorney.  R. 12, 28, 70, 72.  At the end of the hearing, counsel advised the ALJ that he was "not bound by the 100 percent finding of the VA, but he [thought] the regulations do require [the ALJ] to take notice of that."  Counsel mentioned Plaintiff's obesity and sleep apnea that can lead to a lack of mental clarity and drowsiness during the day.  Counsel also requested the ALJ, depending on the ALJ's analysis, to supplement the record with an ME because he thought Plaintiff "is equivalent to a listing with his" deep venous thrombosis.  R. 52-53.

On June 24, 2011, the ALJ issued a decision denying Plaintiff's application for benefits.  R. 12-21.  Mr. Goldberg withdrew from representing Plaintiff on July 14, 2011.  R. 8.  Plaintiff filed a request for review, R. 6-7, and, by new counsel, submitted additional evidence that was considered by the Appeals Council.  R. 1-5 (Exhibits 22E-30E (R. 237-87), 13F-22F (R. 499-530)).  On March 21, 2013, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner.  R. at 1-5; 20 C.F.R. § 404.981.

On May 17, 2013, Plaintiff filed a Complaint with the United States District Court seeking review of the ALJ's decision. Doc. 1. The parties filed memoranda of law, docs. 14-15, which have been considered.

## II. Findings of the ALJ

The ALJ made several findings relative to the issues raised in this appeal:

1. Plaintiff "meets the insured status requirements of the Social Security Act through December 31, 2012." R. 14.

2. Plaintiff "has not engaged in substantial gainful activity since July 17, 2007, the alleged onset date." *Id.*

3. Plaintiff "has the following severe impairments: obesity; osteoarthritis of the spine; factor V Leiden deficiency with history of deep venous thrombosis (2001 & 2010) and pulmonary embolism; obstructive sleep apnea; and hypertension." *Id.*

4. Plaintiff "does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." R. 15.

5. Plaintiff "has the residual functional capacity [RFC] to perform light work as defined in 20 CFR 404.1567(b) except the [Plaintiff] needs the ability to change positions between siting and standing at will. [Plaintiff] may never climb ladders, ropes and scaffolds, crouch or crawl, but may occasionally climb ramps and stairs, balance, stoop, and kneel. [Plaintiff] should have no concentrated exposure to vibration, hazards, (machinery, heights, etc.), or pulmonary irritants. [Plaintiff] need[s] the ability to elevate his legs up to a 90 degree angle at will." R. 15.

6. "Plaintiff "is capable of performing past relevant work as an administrative assistant and hearing officer. This work does not require the performance of work-related activities precluded by [Plaintiff's RFC]." *Id.* Both jobs are sedentary with "a built-in ability to change positions." R. 19.

7. Plaintiff "has not been under a disability, as defined in the Social Security Act, from July 17, 2007, through the date of [the ALJ's] decision." R. 20.

### III. Legal Standards Guiding Judicial Review

This Court must determine whether the Commissioner's decision is supported by substantial evidence in the record and premised upon correct legal principles. 42 U.S.C. § 405(g); Chester v. Bowen, 792 F.2d 129, 131 (11th Cir. 1986). "Substantial evidence is more than a scintilla, but less than a preponderance. It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983) (citations omitted); accord Moore v. Barnhart, 405 F.3d 1208, 1211 (11th Cir. 2005). "The Commissioner's factual findings are conclusive if supported by substantial evidence." Wilson v. Barnhart, 284 F.3d 1219, 1221 (11th Cir. 2002) (citations omitted).[1]

"In making an initial determination of disability, the examiner must consider four factors: '(1) objective medical facts or clinical findings; (2) diagnosis of examining physicians; (3) subjective evidence of pain and disability as testified to by the claimant and corroborated by [other observers, including family members], and (4) the claimant's age, education, and work history.'" Bloodsworth, 703 F.2d at 1240 (citations omitted).

A disability is defined as a physical or mental impairment of such severity that the claimant is not only unable to do past relevant work, "but cannot, considering his age,

---

[1] "If the Commissioner's decision is supported by substantial evidence we must affirm, even if the proof preponderates against it." Phillips v. Barnhart, 357 F.3d 1232, 1240, n.8 (11th Cir. 2004) (citations omitted). "A 'substantial evidence' standard, however, does not permit a court to uphold the Secretary's decision by referring only to those parts of the record which support the ALJ. A reviewing court must view the entire record and take account of evidence in the record which detracts from the evidence relied on by the ALJ." Tieniber v. Heckler, 720 F.2d 1251, 1253 (11th Cir. 1983). "Unless the Secretary has analyzed all evidence and has sufficiently explained the weight he has given to obviously probative exhibits, to say that his decision is supported by substantial evidence approaches an abdication of the court's 'duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.'" Cowart v. Schweiker, 662 F.2d 731, 735 (11th Cir. 1981) (citations omitted).

education, and work experience, engage in any other kind of substantial gainful work

which exists in the national economy."  42 U.S.C. § 423(d)(2)(A).  A disability is an

"inability to engage in any substantial gainful activity by reason of any medically

determinable physical or mental impairment which can be expected to result in death or

which has lasted or can be expected to last for a continuous period of not less than 12

months."  42 U.S.C. § 423(d)(1)(A); *see* 20 C.F.R. § 404.1509 (duration requirement).

Both the "impairment" and the "inability" must be expected to last not less than 12

months.  Barnhart v. Walton, 535 U.S. 212 (2002).  In addition, an individual is entitled

to DIB if he is under a disability prior to the expiration of his insured status.  *See*

42 U.S.C. § 423(a)(1)(A); Torres v. Sec'y of Health & Human Servs., 845 F.2d 1136,

1137-38 (1st Cir. 1988); Cruz Rivera v. Sec'y of Health & Human Servs., 818 F.2d 96,

97 (1st Cir. 1986).

     The Commissioner analyzes a claim in five steps.  20 C.F.R. § 404.1520(a)(4)(i)-

(v):

    1.  Is the individual currently engaged in substantial gainful activity?

    2.  Does the individual have any severe impairments?

    3.  Does the individual have any severe impairments that meet or equal
    those listed in Appendix 1 of 20 C.F.R. Part 404, Subpart P?

    4.  Does the individual have the RFC to perform work despite limitations
    and are any impairments which prevent past relevant work?[2]

    5.  Do the individual's impairments prevent other work?

---

[2]  A residual functional capacity (RFC) is the most a claimant can still do despite
her limitations.  20 C.F.R. § 404.1545(a)(1).  It is an assessment based upon all of the
relevant evidence including the claimant's description of her limitations, observations by
treating and examining physicians or other persons, and medical records.  *Id.*  The
responsibility for determining claimant's RFC lies with the ALJ.  20 C.F.R.
§ 404.1546(c).

A positive finding at step one or a negative finding at step two results in disapproval of the application for benefits.  A positive finding at step three results in approval of the application for benefits.  At step four, the claimant bears the burden of establishing a severe impairment that precludes the performance of past relevant work.  Consideration is given to the assessment of the claimant's RFC and the claimant's past relevant work.  If the claimant can still do past relevant work, there will be a finding that the claimant is not disabled.  If the claimant carries this burden, however, the burden shifts to the Commissioner at step five to establish that despite the claimant's impairments, the claimant is able to perform other work in the national economy in light of the claimant's RFC, age, education, and work experience.  Phillips, 357 F.3d at 1237; Jones v. Apfel, 190 F.3d 1224, 1229 (11th Cir. 1999); Chester, 792 F.2d at 131; MacGregor v. Bowen, 786 F.2d 1050, 1052 (11th Cir. 1986); 20 C.F.R. § 404.1520(a)(4)(v), (e) & (g).  If the Commissioner carries this burden, the claimant must prove that he or she cannot perform the work suggested by the Commissioner.  Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987).

## IV.  Issue

Plaintiff does not provide the Court with a summary of Plaintiff's medical history. Doc. 14.  Rather, Plaintiff referred to his hearing testimony when he stated that he was 100 percent disabled, permanent and totally, from the VA, a finding made on August 18, 2010, and backdated to November 21, 2008.  Doc. 14; R. 41.  Plaintiff refers to the Department of Veterans Affairs Decision Review Officer Decision of August 18, 2010, doc. 14 at 2-5; R. 137-40, 267-69, and the VA's schedule for rating disabilities.  Doc. 14 at 5-10.

Plaintiff argues, without referring to any other evidence, including any of the ALJ's findings that the ALJ failed "to give great weight to the VA's finding that as of November 21, 2008, Plaintiff Boyette was unable to secure a gainful occupation and therefore entitled to TIDU [Total Disability based on Individual Unemployability] benefits."  Doc. 14 at 15.  Plaintiff requests that this matter be remanded to the Commissioner "with instructions to give great weight to the VA's decision that Plaintiff Boyette is 100% disabled because he is unable to maintain substantial employment." *Id.*

The Commissioner provides a summary of the evidence, doc. 15 at 4-13, including but not limited to Plaintiff's evaluation and treatment at the Gainesville Veterans Administration Medical Center (VAMC) from approximately December 2008 through approximately March 2011.  Doc. 15 at 4-13.  The Commissioner states that "[i]n August 2010, the VA determined that Plaintiff was entitled to individual unemployability as of November 21, 2008 because it was reasonable to presume that he was unable to secure or follow a substantially gainful occupation as a result of service-connected disabilities (Tr. 121-23)."  Doc. 15 at 13.  The Commissioner suggests that the ALJ properly considered the VA's disability rating in light of the evidence of record and states: "As [of] August 2010, Plaintiff's left lower extremity post phlebotic syndrome due to deep vein was evaluated at 40% disabling, his lumbar spine degenerative disc disease was evaluated at 20% disabling, right knee strain was evaluated at 10% disabling, and sleep apnea was evaluated at 50% disabling (Tr. 121-23).  Plaintiff also testified that that the VA determined that he was 100% disabled permanently (Tr. 40)."  Doc. 15 at 13.

## V.  The ALJ's Findings

The ALJ made brief factual findings at steps one through three.  R. 14-15.  The ALJ made detailed factual findings when he assessed Plaintiff's RFC and these findings are set forth below.  Relevant here, they include the ALJ's reference to Plaintiff's testimony, including that he is 100 percent disabled under the VA regulations and findings, R. 16; care that Plaintiff received at the VA and other treating sources, R. 17-19; and the ALJ's brief discussion of the weight afforded the clinical findings reported by the VA medical staff and the VA's determination, R. 19.  The ALJ's findings, as annotated with citations to the record, are as follows:

> The claimant testified that he has a bachelor's degree in Business, that he is about 69 inches tall and weighs 285 pounds. He said he does not need a wheelchair cane or walker to get around.  He said he drives about twice a week [R. 29-30].  The claimant said he decided it was not feasible for him to work on his alleged onset date [R. 31].  He said that he has numbness in his right hand and finger, would limit him from being able to safely handle and operate a weapon in his job as a probation officer.  He said he has also worked as an assistant football coach for a High School football team in 2008 and 2009 [R. 31]. He said it was only a couple hours after school.  He said he could not physically do it in 2010.  The claimant testified that he retired from the army in 2005, where he was a logistics specialist and he had administrative duties.  He said he receives about $2,800.00 per month from the VA [R. 32-33].

> The claimant testified that he cannot work due to a blood clotting disorder, pulmonary embolisms, swelling in his lower extremities, knee problems, with limited range of motion and flexibility, degenerative disc disease/osteoarthritis in his lumbar and cervical spine, sleep apnea, hearing loss in left ear, tinnitus. He said he does not use a hearing aid.  He said his back pain increases when he is sitting and standing, elevating his feet alleviates some of his swelling.  He said that using a mouse or working on a computer, irritates his neck and arms.  He said that medication helps, along with lying down to relieve pressure from his back.  He said his side effects vary from drowsiness, irritability, concentration, and that sometimes his head is swimming after taking oxycodone.  The claimant testified that his doctors have not told him he could not work.  He said that

Dr. Greenberg told him to limit activities that cause him pain. He said he could not get surgery due to his clotting disorder. He said he is not supposed to stay in a static position too long due to his clotting disorder [R. 34-36].

The claimant testified that his wife does the chores, that he can handle his personal hygiene, takes medication, watches TV, talks to wife, has lunch, naps, goes outside, watches wife work in vegetable garden, eats, watches TV, and sleeps. He said he knows how to use the computer, and may email at times. He said he can shop if he needs something like a loaf of bread. He reads occasionally, manages his bills, does not smoke but may have wine on occasion and does not use illegal drugs [R. 38-41]. He said he worked with the kids for an hour and a half to two hours after school. He said he is 100% disabled under the VA regulations and findings [R. 41]. He said his weight has steadily increased over the last few years. He said his hypertension is under control, he uses a CPCP [sic] at night for obstructive sleep apnea. He said he was hospitalized twice for pulmonary emboli. He said he has to elevate his legs every day, about 80-90% of the time or he will have swelling and pain. He said that he is home fifteen days of the month he is homehound and that when he has swelling, he wears flip-flops. He said he spent five days in the hospital last year. He said he has varicose veins, and has to keep his legs above his heart, most of the time. He said he would not be here if he could work [R. 41-48].

After careful consideration of the evidence, I find that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment.

In terms of the claimant's alleged onset date, there is nothing in the record to corroborate the onset of disability. As the claimant testified, he just decided that he would quit working on that date and seek out disability due to problems with his hand numbness. However, on June 22, 2010, the claimant reported that his index finger numbness was gone and was only affecting his thumb, while he had good strength bilaterally (Ex 11F/4) [R. 394].

On December 6, 2008, the claimant reported he had developed left calf pain after he recently started working out, and that his coumadin had been discontinued due to bleeding complications. He reported his pain was made better by sitting still and his pain level was 2/10 (Ex 12F/96, 98) [R. 494-98].

On November 3, 2009, the claimant reported a recent flare-up of lower back pain and was given Flexeril (Ex. 2F/3). A cervical MRI on May 5, 2010, revealed degenerative disc disease at C5-C6, with no abnormal cord signal at any level (Ex. 6F/1) [R.366]. Imagery of the claimant's lumbar spine on July 26, 2010, revealed minimal degenerative disc disease at L4/L5 showing little change when compared to August of 2004 (Ex. 7F/1) [R. 368].

It was opined on January 14, 2010, that the claimant's hypertension would not preclude light or sedentary employment, while strenuous physical employment was opined to be limited due to his phlebotic [sic] syndrome, sleep apnea and back conditions. He reported his blood pressure had been fairly well controlled over the past year (Ex. 4F/21) [R. 340-41, 345]. Deep venous thrombosis ultrasound vascular studies of the claimant right calf was [sic] normal [sic] were normal on January 14, 2010, and left calf studies on December 6, 2008 were negative but did not exclude calf vein thrombosis (Ex. 4F/39-40) [R. 359-60].[3] The claimant testified that he cannot have the cervical spinal surgery performed due to the [sic] his clotting disorder, but they [sic] are very few abnormal clinical abnormalities listed in the neurosurgical physical examination on May 18, 2010. The claimant had normal strength, bulk and tone in his upper and lower extremities, normal sensory exams, normal gait, equal and symmetrical reflexes (Ex. 11F/8) [R. 396-98]. The claimant did not even have a primary care provider as recently as June 2010 (Ex. 12F/73) [R. 471], and subsequent examinations have resulted in no remarkable clinical abnormalities (Ex. 12F/38-42) [R. 436-40]. In April of 2010, the claimant had managed to reduce his weight to 254.8 pounds and decrease his thumb and index finger numbness (Ex. 10F) [R. 388].

The claimant's only complaint was pain when walking on June 3, 2010, after he had just driven back from a five-day Mississippi trip (Ex. 12F/86) [R. 459, 482, 484]. He requested a cane after stating his right legs was sore on June 8, 2010 (Ex. 12F/68) [R. 466]. He was admitted on June 8, 2010 for a pulmonary embolus and a clot in his leg, and was discharged on June 10, 2010 (Ex. 12F/25-26) [R. 423-24]. On June 9, 2010, it was noted that the claimant had been treated conservatively for right calf pain since June 3, 2010, which had developed into a distal popliteal deep venous thrombosis, and was treated with Arixtra and coumadin. The claimant reported he was otherwise doing well, and that every few months he gets thrombophlebitis which he conservatively manages with NSAIDS. He reported trying compression stockings for ankle swelling, but felt he did not get much benefit from them. He reported he was retired and living a relatively sedentary life (Ex. 12F/61-62) [R. 459-60].

It was noted on June 8, 2010, that if he needed surgical intervention on his neck, a cervical myelogram would be done first, however there is no evidence that one

---

[3] It appears that in March 2010, there is an opinion from Edward Holzer, A.R.N.P., that Plaintiff's "SC condition of left lowe[r] extremity post phlebotic syndrome is at least as likely as not to mildly to moderately impair his ability to perform his physical [ ] and is at least as likely as not to mildly impact his sedentary employment. *However, [t]he veteran's SC condition should not preclude light duty.* Strenuous physical employment is limited given the veteran's SC phlebotic syndrome condition. The veteran has significant limitation with physical activities which include heavy lifting, prolonged standing, sitting or walking. Vet would likely require frequent rest periods in order to stretch, rest and move around in order to perform his duties adequately." R. 333-34 (emphasis added).

has been requested (Ex. 11F) [R. 395; *see* R. 391-94].  On June 30, 2010, the claimant established with the VA for primary care, he was counseled on diet, and to continue exercising every day, and avoid long trips.  He reported exercising four times a day and losing weight and had no complaints.  His gait was coordinated and smooth, extremities had no swelling or numbness.  The claimant weighed in at 275 pounds.  He reported he was doing well, with only occasional edema when he was on his feet for prolonged periods of time.  (Ex. 12F/37-42) [R. 435-40].  This swelling would be a rare occurrence, according to his testimony because he said he spends 80-90 percent of his time with his legs elevated.  On July 19, 2010, the claimant had a three week follow-up for right knee pain and was given an orthopedic consult for it (Ex.10F/3) [R. 385].

On August 3, 2010, home traction for his neck was continued because surgery was ruled out do [sic] to his need for anti-clotting medications (Ex. 11F) [R. 393]  On October [September] 20, 2010, the claimant reported he needed an MRI to evaluate for a cartilage tear in his right knee (Ex. 10F/2) [R. 384].  On October 29, 2010, the claimant was to reinitiate an exercise program and continue traction at thirty pounds (Ex. 11F/1) [R. 391].  The claimant chose to quit coumadin on December 16, 2010, after nine months of treatment, but continued with arixtra.  The claimant reported he was feeling good with no signs or symptoms, and that he and his orthopedic surgeon had decided against surgery (Ex. 12F/29-30) [R.427-28].  On March 15, 2011, the claimant reported he was doing well and had no signs or symptoms (Ex. 12F/27) [R. 425].

The claimant was examined by Robert A. Greenberg, M.D., for a consultative examination on July 30, 2010, who noted decreased range of motion in his neck, back and hips, positive straight leg raising tests and normal gait and station.  The claimant had normal grip strength and fine manipulation.  The claimant weighed in at 280 pounds and his blood pressure was 134/94.  Cervical and lumbar osteoarthritis were diagnosed, but no mention was made of a knee problem or obstructive sleep apnea (Ex. 8F) [R. 371-74].[4]  I note that the claimant was previously diagnosed with obstructive sleep apnea by this same Dr. Greenberg in November 2008, who recommended use of a CPAP but fails to mention it now (Ex. 1F) [R.288-91].  This may indicate that the claimant is not compliant with CPAP usage and that it does not cause him significant limitations.

A State disability expert [Robert Steele, M.D.] has examined the file and opined that the claimant is capable of a wide range of light exertional activity, including frequently performing postural activities except for occasionally climbing ladders, ropes and scaffolds, and avoiding concentrated exposure to vibration and hazards (Ex. 9F) [R. 375-82 (August 20, 2010)].

In terms of the claimant's obesity, I have considered its effect upon the claimant and how it contributes to the severity of his symptoms (SSR 02-1p).  However,

---

⁴  Dr. Greenberg also states: "Chronic DVTs involving both lower extremities, resulting in pulmonary emboli, secondary to factor V Leiden deficiency."  R. 274.

there is no evidence here that the claimant's obesity has significantly interfered with his work or activities of daily living. Although the claimant may experience some difficulty after prolonged strenuous activity, there is no evidence or allegation that the claimant's obesity precludes the performance of all work activities. The claimant has also demonstrated the ability to lose weight.

The claimant's alleged need to elevate his legs is not corroborated by his treating sources reports, but I have resolved doubts in the claimant's favor by including it in the residual functional capacity above.

**As for the opinion evidence, Veteran's administration examiners have opined that the claimant has been capable of light or sedentary employment (Ex. 4F/21) [R. 341 (hypertension); *see supra* n.3], which I find to be consistent with the medical and other evidence of record. Likewise, his primary care provider opened [sic] that he should continue to exercise day [sic] and avoid long trips, but did not otherwise limit the claimant activities (Ex. 12F/42) [R. 440; *see* R. 442]. The records from the VA or any other treating source do not indicate that he is precluded from sedentary work activities. While a State disability expert has found the claimant more capable than I have, some weight is still being given to his opinion, to the extent that it is not consistent with the residual functional capacity delineated above.**

**While the claimant has been found disabled under the VA regulations [R. 119-23, 137-40, 267-69, 274], I am not bound by their findings, the undersigned Administrative Law Judge is not bound by the decision of another governmental or non-governmental agency (20 CFR § 404.1504 and § 416.904). Other agencies may determine disability under parameters which are not identical to disability under the Social Security Act.[5] Consequently, while the clinical findings reported by the VA medical staff were given appropriate weight, the final opinion as to degree of disability is not entitled to controlling weight. Nevertheless, I have given some weight to the VA records, which reveal the ability to work at the light and sedentary levels.**

In sum, the above residual functional capacity assessment is supported by the medical and other evidence of record which reveals that the claimant works when he wants to at jobs such as a part time assistant High School Football Coach, while alleging that he is totally disabled. The claimant was able to take a long trip, lose significant weight only to regain it later and has no real incentive to work, given his receipt of VA disability and military retirement. His hypertension is managed according to his testimony, and while he alleges that he spends all of

---

[5] The ALJ does not discuss the differences in the criteria used by the VA in making disability evaluations as compared to disability decisions under the Social Security Act. There are differences as explained in <u>Jenkins v. Astrue</u>, Case No. 1:11-cv-23-MP-GRJ, 2012 U.S. Dist. LEXIS 32259, at *30-32 (N.D. Fla. Feb. 8, 2012).

his time in the recliner, this level of inactivity was not mandated by any treating source.  To the contrary, treating sources have encouraged the claimant to remain active with exercise and home therapy with at least thirty pound weights for his neck.  The claimant's reported upper extremity numbness was noted to have subsided. The claimant's assertions are far in excess of the medical evidence of record and other evidence.  Accordingly, I find that the residual functional capacity delineated above is the most that the claimant can do, despite the existence of his impairments.

R. 16-19 (emphasis added); *see supra* at 3 for the ALJ's RFC assessment.

As part of the step four analysis, the ALJ determined that Plaintiff is capable of performing past relevant work as an administrative assistant and hearing officer.  R. 19, 50-51.  The ALJ relied, in part, on the testimony of the vocational expert who testified that the administrative assistant job was sedentary work with an SVP of seven and a skilled position and the hearing officer job was also sedentary work with an SVP of nine, a highly skilled job.  R. 50-51.

## VI.  Legal Analysis

**The ALJ did not commit reversible error in not giving great weight to and adopting the determination made by the VA that Plaintiff was permanently and totally disabled as of November 21, 2008.**

Plaintiff argues that the ALJ erred in not giving appropriate weight (great weight) to the determination made by the VA that he was permanently and totally disabled as of November 21, 2008.  Doc. 14 at 5-16.  The Commissioner responds that no error was committed.  Doc. 15 at .14-21.

Plaintiff, as the claimant, bears the burden of proving that he is disabled, and consequently, is responsible for producing evidence in support of his claim.  *See* 20 C.F.R. § 404.1512(a); <u>Moore v. Barnhart</u>, 405 F.3d at 1211. "Evidence is anything you or anyone else submits to us or that we obtain that relates to your claim."  This includes,

but is not limited to: . . . (5) Decisions by any governmental or nongovernmental agency about whether you are disabled or blind." 20 C.F.R. § 404.1512(b)(5).

In Social Security Ruling (SSR) 06-03p, the Commissioner provides a policy interpretation ruling regarding, and relevant here, consideration that may be given to decisions by other governmental and nongovernmental agencies. In part, the Commissioner refers to 20 C.F.R. § 404.1504 as follows:

> [a] decision by any governmental agency or any other governmental agency about whether you are disabled or blind is based on its rules and is not our decision about whether you are disabled or blind. We must make a disability or blindness determination based on social security law. Therefore, a determination made by another agency [e.g., Workers' Compensation, the Department of Veterans Affairs, or an insurance company] that you are disabled or blind is not binding on us.

SSR 06-03p. The Commissioner makes clear that "only a State agency or the Commissioner can make a determination based on Social Security law that" a claimant is disabled and the Commissioner is not bound by any such decision. *Id.* The Commissioner confirms, however, that all the evidence must be evaluated, including decisions by other governmental and nongovernmental agencies, citing to 20 C.F.R. § 404.1512(b)(5). SSR 06-03p. "Therefore, evidence of a disability decision by another governmental or nongovernmental agency cannot be ignored and must be considered." *Id.*

> These decisions, and the evidence used to make these decisions, may provide insight into the individual's mental and physical impairment(s) and show the degree of disability determined by these agencies based on their rules. We will evaluate the opinion evidence from medical sources, as well as "non-medical sources" who had contact with the individual in their professional capacity, used by other agencies, that are in our case record, in accordance with 20 CFR 404.1527, 416.927, Social Security Rulings 96-2p and 96-5p, and the applicable factors listed above in the section "Factors for Weighing Opinion Evidence."

SSR 06-03p.

The Eleventh Circuit has held that "[t]he findings of disability by another agency, although not binding on the Secretary, [now the Commissioner], are entitled to great weight." <u>Falcon v. Heckler</u>, 732 F.2d 827, 831 (11th Cir. 1984) (on rehearing) (quoting <u>Bloodsworth v. Heckler</u>, 703 F.2d 1233 at 1241)).  Relevant here, a disability rating by the VA is not binding on the Commissioner, but is entitled to great weight.  <u>Brady v. Heckler</u>, 724 F.2d 914, 921 (11th Cir. 1984); <u>Rodriguez v. Schweiker</u>, 640 F.2d 682, 686 (5th Cir. 1981) (holding that "a V[eterans] A[dministration] rating is certainly not binding on the [Commissioner], but it is evidence that should be considered and is entitled to great weight  . . . and should have been more closely scrutinized by the ALJ." (citations omitted));[6] *see* <u>Adams v. Comm'r of Soc. Sec.</u>, No. 13-10712, 2013 U.S. App. LEXIS 21593, at *6-8 (11th Cir. Oct. 24, 2013) (unpublished).  Here, Plaintiff argues that the ALJ did not give appropriate weight to the VA decision.

The ALJ examined the evidence of record and provided a detailed explanation for why Plaintiff could perform within the limits of the restrictive RFC assessment and thus was not disabled as suggested by the VA disability determination.  R. 19.  The ALJ discussed the objective medical evidence, Plaintiff's treatment history and testimony, and the medical opinions relating to Plaintiff's severe impairments.  As a result, the ALJ considered and weighed the medical findings and opinions contained in the VA records that substantially formed the basis of the VA disability determination.  R. 17-19.

As pointed out by the ALJ, there are medical opinions from VA medical sources that Plaintiff could perform at least a limited range of light or sedentary employment,

---

[6]  Decisions of the United States Court of Appeals for the Fifth Circuit decided prior to September 30, 1981, are binding precedent in the Eleventh Circuit.  <u>Bonner v. Prichard</u>, 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc).

notwithstanding Plaintiff's inability to engage in strenuous activities, such that Plaintiff could not sit, stand, or walk for prolonged periods of time. R. 19, 333, 341; *see supra* n.3. The ALJ's RFC assessment accounted for these limitations by restricting Plaintiff to light work in which he could alternate between a sitting and standing position at will and elevate his feet at will. R. 15. The ALJ ultimately determined that Plaintiff "is capable of performing past relevant work as an administrative assistant and hearing officer. This work does not require the performance of work-related activities precluded by [Plaintiff's RFC]." R. 19. According to the vocational expert, both jobs are sedentary with "a built-in ability to change positions." R. 50. The vocational expert also stated that "because they are skilled, there's more flexibility in position change, and [she thought] that's just the nature of skilled work." R. 51.

The ALJ considered the clinical findings of the VA medical staff and other medical evidence in light of Plaintiff's complaints and severe impairments and also considered the VA's disability determination in light of this evidence. The ALJ explained the decision not to give the disability determination "controlling weight." R. 19. Substantial evidence supports the ALJ's consideration and weight given to the VA's disability determination. Adams v. Comm'r of Soc. Sec., 2013 U.S. App. LEXIS 21593, at *7-8.

## VII.  Recommendation

In view of the foregoing, it is respectfully **RECOMMENDED** that the decision of

the Commissioner should be **AFFIRMED** pursuant to Sentence Four of 42 U.S.C.

§ 405(g) and judgment entered for the Commissioner.

**IN CHAMBERS** at Tallahassee, Florida, on February 14, 2014.


<u>s/  Charles A. Stampelos</u>
**CHARLES A. STAMPELOS**
**UNITED STATES MAGISTRATE JUDGE**


<u>**NOTICE TO THE PARTIES**</u>

**A party may file specific, written objections to the proposed findings and recommendations within 14 days after being served with a copy of this report and recommendation.  A party may respond to another party's objections within 14 days after being served with a copy thereof.  Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**